UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MICHAEL L. TAYLOR,                           )
                                             )
            Plaintiff,                       )
                                             )
      v.                                     ) CASE NO.: 1:12-cv-0979-DML-WTL
                                             )
CAROLYN W. COLVIN, Acting                    )
Commissioner of the Social Security,         )
Administration,                              )
                                             )
            Defendant.                       )

## Decision on Judicial Review

Plaintiff Michael L. Taylor, Jr. applied on September 4, 2008, for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI), alleging an onset date of July 31, 2007.  For DIB, Mr. Taylor met the insured status requirement through March 31, 2009.  Acting for the Commissioner of the Social Security Administration, an administrative law judge held two hearings, one on July 29, 2010, and a supplemental hearing on April 12, 2011.  The ALJ issued his decision on May 12, 2011, finding that Mr. Taylor is capable of performing the work requirements of a packer, an assembler, and a machine tender, and that those jobs exist in significant numbers in Indiana.  Consequently, the ALJ decided that Mr. Taylor was not disabled.  The Appeals Council denied review of the ALJ's decision on June 5, 2012, rendering the ALJ's decision for the Commissioner final.  Mr. Taylor timely filed this civil action for judicial review of the Commissioner's decision.  The parties have consented to the magistrate judge conducting all

proceedings and ordering the entry of judgment in accordance with 28 U.S.C. 636(c) and Fed. R. Civ. P. 73.

Mr. Taylor's asserted disability stems from mental impairments.  The ALJ found that Mr. Taylor suffers from major depressive disorder, generalized anxiety disorder, personality disorder, intermittent explosive disorder, and borderline intellectual functioning.  But he determined that the mental impairments did not satisfy one of the listings of impairments for mental disorders, and that functionally, Mr. Taylor is capable of performing simple and repetitive tasks with reasonable pace and persistence, but that his work cannot involve interacting with the general public and can require only brief and superficial interactions with coworkers.

Mr. Taylor challenges these findings on the grounds that the ALJ (a) did not have sufficient evidence to determine whether Mr. Taylor's mental impairments satisfied a listing and (b) improperly assessed the credibility of Mr. Taylor and his parents regarding his functioning, which led to a finding of residual functional capacity that is not supported by substantial evidence.[1]

For the reasons addressed below, the Commissioner's decision is AFFIRMED.

---

[1]     Mr. Taylor's opening brief also states that "the ALJ erroneously failed to give controlling weight to the opinions of the claimant's treating physicians that he could not sustain employment."  (Dkt. 17 at p. 12).  Mr. Taylor does not identify the treating physicians to whom he is referring but he must mean Dr. Tyring, who is the only medical professional who had more than a passing treating relationship with him.  Dr. Tyring did not (nor did any other mental health professional) opine that Mr. Taylor cannot sustain employment.  Mr. Taylor's argument appears to be "copied and pasted" with no application to the facts of this case.

## Standard for Proving Disability

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[2]  Mr. Taylor is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy.  42 U.S.C. § 423(d)(2)(A).  The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability.  20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled.  Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  The

---

[2]    Two programs of disability benefits are available under the Social Security Act:  DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria., 42 U.S.C. § 1381 *et seq.*  The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits.  For SSI benefits, material identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits.  *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five.  RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled.  The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his age, work experience, and education (which are not considered at step four), and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity.  20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential.  A court must affirm if no error of law occurred and if the findings are supported by substantial evidence.  *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001).  Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion.  *Id.*  The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence.  *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004).  The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions.  *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

### Analysis

**A.    The ALJ's step three determination is supported by substantial evidence.**

At step three, the ALJ analyzed whether Mr. Taylor's mental impairments satisfied listings 12.02 (organic mental disorders), 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.08 (personality disorders).  Each of these impairments is described by reference to A, B, and C criteria.  The A criteria must be met or medically equaled and if met, then either the B or C criteria must be met

or medically equaled.  For listing 12.02, which the ALJ used to assess Mr. Taylor's borderline intellectual functioning, the ALJ found that the A criteria were not met and there was no need to further analyze the B or C criteria.  For the other listings, the ALJ assumed the A criteria were met, and then analyzed the B and C criteria.

Mr. Taylor argues that the ALJ's evaluation of the B criteria was erroneous because he "arbitrarily rejected the examining psychologists' consistent GAF assessments of 50 indicating total disability and instead acted as his own psychologist-medical expert to determine the severity of the claimant's impairments," without summoning a psychologist to testify at the hearing whether Mr. Taylor's mental impairments satisfy a listing.  (Dkt. 17 at p. 13).

The court rejects these arguments.

To satisfy the B criteria of the applicable mental impairment listings, Mr. Taylor's mental disorders must result in at least two of the following:

> Marked restrictions of activities of daily living;
>
> Marked difficulties in maintaining social functioning;
>
> Marked difficulties in maintaining concentration, persistence, or pace;
>
> Repeated episodes of decompensation, each of extended duration.

A claimant is markedly limited in activities of daily living if his mental impairments cause "serious" difficulty in doing things such as cleaning, shopping, cooking, maintaining a residence, self-grooming and hygiene "on a consistent, useful, routine basis, or without undue interruptions and distractions."  Listing 12.00(C)(1).  Social functioning examines how the claimant gets along with others,

including family members, friends, neighbors, co-workers, shopkeepers, and strangers.  Marked impairment may be shown by the claimant's inability to act "independently, appropriately, and on a sustained basis" with others, evidenced by a history of altercations, firings, social isolation, or similar dysfunction, as opposed to "cooperative" behavior with others and a sense of social maturity.  Listing 12.00(C)(2).  CPP refers to a claimant's abilities to focus and concentrate long enough to complete tasks.  Marked impairment may be shown where a claimant cannot sustain a level of concentration to complete even simple tasks without extra supervision or assistance.  Listing 12.00(C)(3).  In general, a "marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, effectively, and on a sustained basis."  Listing 12.00(C).

The ALJ evaluated each B factor and explained the evidence he considered and relied upon in reaching his conclusions that Mr. Taylor had (a) no restrictions in his activities of daily living; (b) moderate difficulties in social functioning; (c) moderate difficulties in maintaining concentration, persistence, or pace (CPP); and (d) no episodes of decompensation of extended duration.

In deciding that Mr. Taylor's mental impairments impose no limitations on his daily living activities, the ALJ cited disability paperwork completed by Mr. Taylor which reported that he attends independently to personal grooming, making simple meals, completing household chores, driving, shopping, and participating in

7

leisure activities such as camping, fishing, rock hunting, taking long walks, and watching television. (R. 15).

With respect to social functioning, the ALJ concluded that Mr. Taylor's mental impairments impose moderate difficulties but that he does not suffer markedly. He considered that an agency psychologist had described Mr. Taylor as cooperative and willing to assert his best efforts, but with a history of poor social and coping skills and emotional instability. He acknowledged Mr. Taylor's mother's testimony that her son angers easily around other people, including family members, and retreats to solitude to calm down. Mr. Taylor similarly testified that he has had difficulties getting along with co-workers. A licensed mental health counselor who saw Mr. Taylor once in April 2010 concluded that based on Mr. Taylor's descriptions of his history, Mr. Taylor suffers from social anxiety, has difficulty picking up on and responding appropriately to interpersonal cues, and thus has "great difficulty" performing tasks around other people. His evaluation suggested marked impairment in social functioning, but the ALJ noted that Mr. Taylor saw this counselor one time and did not seek ongoing mental health treatment. He also stressed that Mr. Taylor had been employed in 2007 at a level of substantial gainful activity, indicating that his difficulties with social functioning are managed to a moderate range rather than marked. (R. 19).

With respect to CPP, the evidence was slightly mixed, but it supports the ALJ's decision that Mr. Taylor suffers only moderately and not markedly. During a consultative examination in 2008, agency psychologist Russ Rasmussen stated that

Mr. Taylor had adequate immediate and remote memory and adequate attention and focus, though he could become distracted by others.  (R. 15).  He also opined that Mr. Taylor had the cognitive abilities and concentration necessary to complete work tasks.  The ALJ considered a report by agency psychologist Floyd Robison who saw Mr. Taylor once in December 2008 and opined that he had a fair prognosis for substantial improvement in his mental health with treatment.  There was very little evidence of any actual mental health treatment.  The ALJ reviewed Mr. Taylor's medication and counseling visits with his doctor (Dr. David Tyring) from July 2010 to February 2011.  These records showed that Mr. Taylor reported symptoms of depression, fatigue, poor concentration, and sadness tied to situational stressors such as the breakup with his girlfriend, his parents' divorce, and at the anniversary of his brother's death.  (R. 17).  Dr. Tyring's records showed that Mr. Taylor's depression and ADHD symptoms resolved when he refilled his medications and took them.  Mr. Taylor reported in December 2010 that he was "doing well," his concentration good and his ADHD well-controlled by his Adderal medication.  (R. 275). Two months later, when Mr. Taylor was out of his medications for ADHD, he reported poor concentration.  (R. 277).

As to the last B factor, there was no evidence that Mr. Taylor had suffered any episodes of decompensation of extended duration.

The above findings of the absence of any marked limitations or repeated episodes of decompensation are supported by the opinion of state agency psychologist Joelle Larsen, who completed a Psychiatric Review Technique form

dated October 28, 2008, and reached very similar qualitative conclusions regarding the B criteria. Dr. Larsen's opinion was affirmed by psychologist Dr. Donna Unversaw on December 2, 2008. (Contrary to the ALJ's finding, Drs. Larsen and Unversaw decided that Mr. Taylor was mildly restricted in his activities of daily living, rather than not at all).

Mr. Taylor argues that Dr. Larsen's opinion was too old to be considered reliable and that the ALJ should have asked for a new expert opinion. But Mr. Taylor has not pointed to any medical evidence that post-dates Dr. Larsen's opinion *and* that alters the overall substance of the evidence regarding Mr. Taylor's mental functioning. He does not point to any evidence of a deterioration in his mental functioning. The later records stress difficulties with social functioning (but improvement in CPP with medication), and Mr. Taylor's history of poor social functioning was among the evidence that Dr. Larsen reviewed. Even if the ALJ, or Dr. Larsen, had determined that Mr. Taylor's mental impairments imposed marked difficulties in social functioning instead of moderate, he still would not satisfy the B factors.

The court may not reweigh the evidence. Mr. Taylor has not shown that the record was insufficient for rendering a decision, and he cannot point to any line of evidence that the ALJ failed to consider or that decidedly detracts from his findings. *See Jones v. Astrue,* 623 F.3d 1155, 1162 (7th Cir. 2010) (ALJ is not required to discuss every piece of evidence but is "prohibited only from ignoring an entire line of evidence that supports a finding of disability"). On this point and contrary to Mr.

10

Taylor's contentions, the ALJ gave appropriate attention to the two GAF scores of 50 assigned by the agency psychologists who performed consultative examinations in October and December 2008. (R. 18).  GAF scores are intended to assist a clinician's formulation and implementation of a mental health treatment plan, but they have no direct application to deciding "marked" difficulties under the B factors and are not proxies for deciding presumptive disability at step three.  *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010); *Wilkins v. Barnhart,* 69 Fed. Appx. 775 at *4 (7th Cir. 2003) (cited by *Denton*) (stating that ALJ was not required to mention a GAF score of 40 because is GAF score is designed to influence treatment decisions and not to measure disability under the Social Security Act).

Dr. Larsen's opinion, affirmed by Dr. Unversaw, and the ALJ's analysis of the evidence pertinent to the four B factors constitute substantial evidence that supports the ALJ's decision at step three that Mr. Taylor is not presumptively disabled by his mental impairments.  *Filus v. Astrue,* 694 F.3d 863, 867 (7th Cir. 2012) (ALJ did not err in accepting opinions from state agency physicians that no listings were met or medically equaled where "no other physician contradicted these two opinions"); *Ribaudo v. Barnhart,* 458 F.3d 580, 584 (7th Cir. 2006) (Disability Determination and Transmittal forms filled out by non-examining agency experts are all that is required to support a step three decision so long as "there is no contradictory evidence in the record").

**B.** **Mr. Taylor's attack on the ALJ's credibility determination is conclusory and does not support remand.**

Because the ALJ sees and hears the claimant, his assessment of the claimant's credibility is entitled to special deference from the court. *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008). The court's role is "limited to examining whether the ALJ's determination was 'reasoned and supported,'" and the court may not overturn the ALJ's finding unless it is "patently wrong." *Elder v. Astrue,* 529 F.3d 408, 413-14 (7th Cir. 2008). "It is only when the ALJ's determination lacks any explanation or support that [the court] will declare it to be patently wrong and deserving of reversal." *Id.* (internal citations omitted).

Mr. Taylor's contention that the ALJ's credibility determination is patently erroneous rests on two grounds. First, he asserts that the GAF score of 50 "indicated total disability," but there is no authority that a low GAF score requires an ALJ to accept a claimant's testimony that his mental impairments render him unable to work. Second, Mr. Taylor contends remand is required because of the ALJ's inclusion in his decision of the oft-repeated and illogical boilerplate suggesting that he first decided Mr. Taylor's RFC and then rejected as not credible anything inconsistent with that RFC. But because the ALJ gave several logical reasons why he found Mr. Taylor's statements regarding his severely limited mental functioning not credible, the ALJ's inclusion of the improper boilerplate is not grounds for remand. *Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012) (ALJ's use of boilerplate that he found the claimant not credible "to the extent" that his complaints were not consistent with the RFC is not grounds for remand so long as

12

the decision otherwise reflects an appropriate assessment of the claimant's credibility).

Mr. Taylor has not shown that the ALJ's credibility determination is unreasoned or unsupported, nor could he, because the ALJ provided rational bases for doubting that Mr. Taylor's mental impairments impaired him to a degree that he could not work.  The ALJ noted that Mr. Taylor recently had been employed at a level of substantial gainful activity, even though he and his parents suggested that he had been debilitated by mental impairments since a motorcycle accident in his teen-age years.  He cited Mr. Taylor's employment in 2007 as a reason to discount Mr. Taylor's and his parents' statements that he was unable to get along with co-workers.  He discussed the relative absence of mental health treatment records, despite the mother's statement that her son had been "back and forth" to counseling.  He noted that the counseling records from Dr. Tyring that did exist found that Mr. Taylor's mental health symptoms were triggered by situational stressors and significantly improved (even, "resolved") when he took his medication, an observation with which Mr. Taylor's mother agreed.  He described that Mr. Taylor's daily living activities were wide-ranging and evidenced abilities to act independently and appropriately on a sustained basis.  The ALJ's credibility assessment is not patently erroneous.

**C.     The ALJ's RFC is supported by substantial evidence.**

Mr. Taylor argues that the ALJ's RFC finding "impermissibly failed to account for [Mr. Taylor's] deficiencies in social functioning."  (Dkt. 17 at p. 23).  The

RFC, however, includes restrictions to accommodate the moderate difficulties in social functioning that the ALJ determined were supported by the evidence as a whole.  He found that Mr. Taylor's poor social skills and emotional instability are precipitated by interactions with co-workers, and his RFC limited Mr. Taylor to a work environment that involves no public contact and only brief, superficial interaction with co-workers.  (R. 16).  The ALJ included these limitations (and others related to lower intelligence and concentration issues) in his hypothetical to the vocational expert, who testified that a significant number of jobs are available that fit Mr. Taylor's vocational profile and the RFC.  The ALJ is required only to include in his hypothetical those limitations that he found were credible and supported by the medical evidence.  He did so here.  *See Schmidt v. Astrue,* 496 F.3d 833, 846 (7th Cir. 2007) (ALJ "required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible").  Accordingly, the ALJ's decision that Mr. Taylor is not disabled—there being a significant number of jobs that he has the functional capacity to do—is supported by substantial evidence and must be AFFIRMED.

## Conclusion

The court owes substantial deference to the Commissioner's evaluation of the evidence.  It cannot decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  Because the Commissioner's decision is based on a reasoned evaluation of the evidence, her decision is AFFIRMED.

**So ORDERED.**

**Date:** ___09/27/2013_____

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov